### BAKER et al. v. BAKER et al.

No. 2528.

Court of Civil Appeals of Texas. Eastland.

Feb. 1, 1946.

Rehearing Denied April 12, 1946.

See also 188 S.W.2d 733.

858

L. M. Bickett, of San Antonio, and Ritchie & Ritchie, of Mineral Wells, for appellants.

Allen & Gambill, of Fort Worth, and W. O. Gross, of Mineral Wells, for appellees.

GRAY, Justice.

We adopt the following statement of the nature and results of the suit from appellant's brief:

"This suit was filed by appellants, Myla Baker and T. B. Baker, as plaintiffs, against Earl M. Baker, Resort Hotel Company, a corporation, and Sam R. Sayers and W. O. Gross, trustees, as defendants. The suit was brought for the purpose of obtaining an accounting under a certain trust instrument dated December 10, 1938, executed by Earl M. Baker in favor of Myla Baker, as primary beneficiary, and T. B. Baker, as contingent beneficiary, and for the removal of the two trustees acting under said trust instrument. During the pendency of the suit, Mr. Sam R. Sayers, one of the trustees, resigned. Under the pleadings and the evidence, the case was resolved in a controversy as to the true meaning of, and proper legal construction to be placed upon, the terms of the trust instrument, relating to the minimum net annual payments to Myla Baker and to the payment of income taxes assessed against Earl M. Baker. The trust instrument was set out in full as an exhibit to plaintiffs' petition.

"Upon a trial of the case before the court without a jury, the court found, and on such finding rendered judgment, that, under the trust instrument, Earl M. Baker was entitled to be reimbursed, for income taxes assessed against him, out of annual payments of $9,000 per year stipulated by the trust instrument to be paid to Myla Baker. The effect of such finding and judgment was to reduce the annual payments to Myla Baker, in certain years, below the net amount of $9,000 per year. The judgment ordered the trustees to pay, out of trust funds on hand, the sum of $8,123.46 to Earl M. Baker and the sum of $7,861.75 to Myla Baker. Appellants, on this appeal, complain of that portion of the judgment awarding $8,123.46 to Earl M. Baker and the construction placed by the judgment on the trust instrument which would deprive Myla Baker of an annual minimum payment of $9,000 net per year.

"Appellants excepted to the judgment and gave notice of appeal. Thereafter, they perfected their appeal by the filing of an appeal bond."

The appeal is predicated upon the following point: "The judgment of the district court is erroneous in finding and decreeing that the trust agreement, consisting of the original trust instrument and a letter of the same date, did not guarantee to the beneficiary, Miss Myla Baker, and, at her death, to the successor beneficiary, T. B. Baker, payment of the net sum of $9,000.00 annually out of the trust funds, and in permitting deductions from said annual payments to reimburse Earl M. Baker for income taxes assessed against him, which resulted in reducing the minimum net payment to Miss Myla Baker below the net sum of $9,000.00 in certain years."

On December 10, 1938, appellee Earl M. Baker executed the trust instrument under which this controversy arose. The corpus of the trust fund consisted of the income from 64,000 shares of the common stock of the Baker Hotel at Mineral Wells, Texas, owned and operated by Resort Hotel Company, a corporation. Two trustees were named to administer the trust. Appellant Myla Baker was named as sole beneficiary during her lifetime, and at her death, if he survived her, T. B. Baker was to succeed her as beneficiary. The dividends from said 64,000 shares of stock were to be paid to the trustees, who were to disburse the same. In said instrument, said Earl M. Baker distinctly stipulated against personal liability, but that if the dividends from said shares of stock were insufficient to pay Myla Baker $9,000 per year, it was provided that, upon proper notice, said shares of stock should be sold and the proceeds of such sale be deposited in a bank or banks and the annual payments due to Myla Baker be paid therefrom during her lifetime; provided further, that exhaustion of said deposit or deposits should terminate the trust. However, said Earl M. Baker reserved the right and option, if he elected to exercise same, to defeat such sale of the stock by making such annual payments from his own funds, but without any legal obligation to do so.

Said Myla Baker was to receive the first $9,000 from such trust funds after payment of income taxes and administrative expense, which was nominal, and the

excess income up to $9,000 should be paid to Earl M. Baker. The income above $18,000 was to be shared equally between Myla Baker and Earl M. Baker. The instrument became effective as of January 1, 1939. Contemporaneously with the execution of said instrument on December 10, 1938, said Earl M. Baker gave to Myla Baker a letter authorizing the trustees to pay said annual sum of $9,000 in twelve monthly installments of $750, which letter became and was accepted as part of the contract. With further reference to income taxes, it was provided that in the event it should be ruled by the federal income tax authorities that the income from said 64,000 shares of stock should be taxed against him personally instead of the trust, he having retained the ownership of said shares, he should be first reimbursed from the trust fund for any such payment that he might be required to make before any distribution of the trust fund was made.

For the years of 1939, 1942, 1943 and 1944, the dividends amounted to a total of $60,800, no dividends having been declared by said Resort Hotel Company for the years of 1940 and 1941. However, for said years of 1940 and 1941, said Earl M. Baker, to prevent a default and consequent sale of the stock, elected to pay to said Myla Baker, from his own funds $9,000 for each of said years. The total payments to Myla Baker for said six year period aggregated $30,151.34. She contends that the total payments should have been $54,000. It was conceded by all the parties that the trustees had acted in good faith, the only question being as to whether they had correctly construed the trust instrument.

The case has been ably briefed by both sides, but no authorities were cited by either party. We were advised that they had found no case in point, and that we would have to take the trust instrument, and after considering it as a whole and from its four corners, undertake to find the answer to the only issue involved, which was whether said Myla Baker was entitled to receive the sum of $9,000 net and free from income tax charges for each of the six years. We confess that the case has been one of unusual interest and said trust instrument difficult of construction.

To set out the trust instrument in full would extend this opinion to an undue length, and we shall quote only such excerpts as appear to be pertinent to the one issue involved. The first direct reference to the matter of income tax is found in the concluding part of Section VII of the instrument, which is as follows: "Any expense reasonably necessary and incurred by the trustees in carrying out the terms and provisions of this trust shall be paid out of the fund before distribution, as herein provided for. Said trustees shall annually or when otherwise required by law so to do, make such income tax reports to the United States Government, state or municipality, as may be by law required, *and to pay from such funds* any income tax required by them as trustees or fiduciaries." (Italics ours.)

Parenthetically, there was no administrative expense.

Also, in Section IX, we find the following: "In the event that it should ever be determined that I should be personally liable for income taxes or any character of gift tax on the dividends herein provided to be placed into the trust fund above mentioned, then, in that event, the funds of said trust fund shall first be used to pay the additional income tax or gift tax which I would be forced to pay on account of the receipt of such dividends before any distribution to the beneficiaries or anyone else, as herein provided for, is made. With reference to income taxes, it is understood in this connection, that the amount to be deducted from the trust fund shall be the amount of the increased income tax I would have to pay if the dividends in question were figured as a part of my income for any given year."

From the foregoing quoted provisions, it seems clear as to the source from which all income taxes charged against the trust are to be paid. The language used is plain, unambiguous and needs no construction. Such taxes are directed to be paid from the *trust funds, and before any distribution is made to the beneficiaries or anyone else.* Such payment from the trust fund before any distribution therefrom is made, would undoubtedly clear the entire fund from such taxes, including the $9,000 per year to be paid to Myla Baker or her successor in the trust. This view is further fortified by the provision that, in the event that the income from said shares of stock should be charged to Earl M. Baker personally, and he should be required to pay the same from his own funds, said trus-

tees were required to repay to him from the trust funds the amount of the increased income tax which he was forced to pay, and before any distribution of the funds was made. It should be borne in mind that it was incumbent on the trustees to receive and disburse the dividends and to repay to Earl M. Baker such excess income taxes as he may have been personally required to pay by reason of same having been charged to him instead of to the trust. We think that the trustees were in error in not clearing all income taxes from the fund as a whole, instead of deducting it from any distributive share.

This view has further support in other provisions of the trust instrument, although not specifically mentioning the matter of income taxes. In the preamble it is stated: "Whereas, I, Earl M. Baker, desire to create and maintain a fund and income in trust to be owned, used, expended, and enjoyed by my Aunt, Miss Myla Baker, as hereinafter set out, and am further desirous of guaranteeing that said fund and income shall annually equal the sum of Nine Thousand Dollars ($9,000.00), and for the fulfillment of said guarantee to convey, pledge and hypothecate sixty-four thousand (64,000) shares of stock in Resort Hotel Company, at Mineral Wells, Texas, with the limitation that said fund shall be by my trustees paid to them personally, and said fund, until actual, physical delivery is made to them by the trustees, shall not be alienated, sold, assigned, or otherwise hypothecated by them, and with the further limitation that said fund, during said time, shall not be subjected to judicial process or the payment of their debts or the debts of either, past, present or future."

Here we have the positive guarantee that the payments shall annually equal $9,000, and "for the fulfillment of said guarantee," he pledges and hypothecates the said 64,000 shares of stock.

Section I, subdivision (d) is as follows: "The first $9,000.00 shall be paid to Myla Baker during her life. After her death, in the event T. B. Baker shall survive her, said first $9,000.00 shall be paid to him. If the annual dividends in any year from said stock shall exceed the $9,000.00 hereinabove provided for, then grantor herein is to receive such excess up to $9,000.00. Provided, further, that in the event said annual dividends and income from said stock shall exceed the $18,000.00, as hereinabove provided the same shall be divided equally between grantor and the beneficiary or her successor herein."

It will be noted that not only is the beneficiary to be paid $9,000 per year, but the grantor is to receive no share unless the income exceeds $9,000. They do not share equally unless the income equals or exceeds $18,000 per year, which fact will aid in the interpretation of Section I, subdivision (e), which is as follows: "Reaffirming and continuing in full force and effect the provisions herein guaranteeing the annual payment of $9,000.00 to the beneficiary and her successor, it is my intent and purpose that the total of all dividends paid on said stock during the full period of this trust shall be divided equally between the beneficiary and myself, and if at any time the total dividends and payments received by the beneficiary or successor shall exceed those received by me, then, in such event, the trustees shall pay to me the remainder of funds on hand for distribution, or so much thereof as will make the total sum of payments made to me equal the total sum of payments made to the beneficiary or her successor."

Section I, subdivision (g) provides: "The trustees shall, during the life of this trust, hold, keep and preserve said 64,000 shares of stock in Resort Hotel Company (subject only to grantor's right and power of voting same) and collect all of the dividends and income from said stock and immediately pay over and distribute same to the beneficiaries and grantor as provided for herein; * * * provided, always, however, that the trustees, or either of them, as provided herein, may sell said 64,000 shares of stock in the event grantor defaults in his guarantee and promise to beneficiaries that said 64,000 shares of stock will produce *for their use and benefit* each year the sum of $9,000.00." (Italics ours).

Section III of said instrument is as follows: "For the same consideration herein expressed, and for the further purpose of making certain and definite the right of Myla Baker, as beneficiary, and T. B. Baker, as her successor in trust after her death, I hereby stipulate and agree that if said 64,000 shares of stock do not produce and yield in dividends and income in any year during the existence of this trust the sum of $9,000.00 *for distribution to said beneficiaries,* that said trustees shall collect and distribute such income and divi-

dends as are available and said 64,000 shares of stock shall be by said trustees, or either of them, as hereinafter provided, sold at public vendue for cash and the proceeds of said sale, after payment to beneficiaries of the default accrued and the expense of the sale, shall be deposited by said trustees to their joint account in a national bank or banks selected by said trustees and distributed to Myla Baker, as beneficiary, and T. B. Baker, as her successor in said trust, at the rate of $9,000.00 per year until such fund shall become exhausted or until the death of both Myla Baker and T. B. Baker, which ever shall occur first. Provided, further, that in the event of such sale, the said Earl M. Baker shall not be entitled to participate in any manner nor to any extent in the ownership or distribution thereof, but the net sum so realized shall be distributed by the trustees to the beneficiary or her successor. Provided, further, that in guaranteeing said annual payment of $9,000.00, I am not to be personally responsible and/or liable therefor and no personal judgment for any amount thereof shall ever be entered against me. But the beneficiaries herein, as security for my guarantee of said annual payment of $9,000.00, and the trustees in enforcing same, shall be limited to the use and sale of said 64,000 shares of stock in said Resort Hotel Company. Provided, further, that I have the right and option but not the legal obligation or duty to pay said $9,000.00 annually from any other resources or income and thereby avoid a default." (Italics ours.)

Section V of said instrument is as follows:

"If at the end of any year during the life of this trust the sum of $9,000.00 has not been paid to beneficiaries from either of the sources above mentioned, it shall be the duty of the trustees, or either of them to advertise said stock for sale and sell same for cash to the highest bidder in the following manner:

"When the beneficiary herein entitled to receive said $9,000.00 shall notify both of the trustees in writing that the whole or any part of said $9,000.00 has not been paid for any year, said trustees, or either of them, shall, within five days from receipt thereof, transmit to grantor, in writing, by registered mail, a notice of such default and delinquency, addressed to grantor at his residence in San Antonio, care of Gunter Hotel (or to such substitute residence as grantor may select and notify trustees thereof in writing), which shall constitute due notice to grantor thereof. And upon the date of the mailing of said notice said trustee shall post a notice at a conspicuous place in the Court House of Palo Pinto County, Texas, addressed to whom it may concern, describing said stock and stating therein that same will be sold at the court house door of Palo Pinto County, Texas, between the hours of 10:00 o'clock A.M. and 4:00 O'clock P.M. on the first Tuesday after the expiration of 30 days from said date. Said trustees posting such notice shall on said date, by registered mail, transmit a copy to grantor at his residence as above indicated. The grantor, as well as either beneficiary named herein, shall have the right to become a purchaser of said stock, and either of said trustees is authorized and empowered after sale to make the purchaser thereof a valid and binding transfer and assignment of said stock.

"Provided, further, however, that grantor may, at any time prior to the day of sale, pay to the trustee or trustees posting such notice the sum in default and unpaid, together with the expense of posting said notices, which expense shall not exceed $50.00, and no sale with respect to such particular default shall be had or held.

"This grant, trust and guarantee shall in all things be binding upon me, my heirs, assigns, and personal representatives."

We here quote in full the letter of E. M. Baker to the beneficiaries dated December 10, 1938, providing for optional payments of $750 per month instead of lump-sum payments annually of $9,000:

"Fort Worth, Texas
December 10, 1938

Miss Myla Baker, Beneficiary
Mr. T. B. Baker, as her Successor

In Trust
Mineral Wells, Texas

I have this day executed and delivered to the Trustees named therein a certain Trust Agreement wherein you are to receive the sum of nine thousand dollars ($9,000.00) annually as a guaranteed dividend from the sixty-four thousand (64,000) shares of the Resort Hotel Company stock placed in the hands of said Trustees.

While my guarantee is limited to the annual payment at the end of each year, as set forth in said Trust Agreement, yet,

as a matter of convenience to you, I agree that the beneficiary entitled thereto may draw the sum of seven Hundred fifty dollars ($750.00) each month during the life of said Trust Agreement; that is, beginning on the 1st day of February, 1939, you may draw the sum of $750.00, and a like sum on the first of each succeeding month, so that, at the end of each year during the life of the Trust Agreement, the $9,000.00 so guaranteed will have been discharged.

It is not intended by the giving of this letter or the acceptance thereof by those to whom it is addressed that the terms of said Trust Agreement, particularly the terms of the guarantee therein contained, shall in any manner be nullified or suspended. The object of this instrument being to permit beneficiaries (but not guarantee them the right so to do) to obtain the $9,000.00 so guaranteed annually in monthly withdrawals from the earnings of said stock.

(signed) E. M. Baker."

From said quoted provisions relating to payment of all income taxes from the trust funds before any distribution be made, together with the often repeated and reiterated statement and guarantee that the beneficiary should receive $9,000 each year, we are forced to the conclusion that it was the intent and purpose of the grantor that the beneficiary should receive a minimum payment of $9,000 each year, free from all income tax or other charges. It would be an anomaly to require all such charges to be paid from the trust fund before any distribution is made to the beneficiary, and then to charge the beneficiary with the income tax, thus reducing her guaranteed $9,000 per year. If the dividends for any year should not exceed administrative expense and income tax requirements, there would have resulted a default in the payment to the beneficiary, and she could have demanded a sale of the stock, which said Earl M. Baker could have prevented only by making payment from some other source. Said Earl M. Baker undoubtedly placed this construction on the trust instrument by his voluntary payments to Myla Baker of $9,000 for each of the years of 1940 and 1941, when no dividends were declared. It should further be borne in mind that throughout the trust instrument, said Myla Baker is "guaranteed" $9,000 per year, and no provision is made whereby under any circumstances or

in any contingency, she should receive less. We would not be permitted to read into the instrument a condition or provision contradictory to its plain provisions that the beneficiary should receive $9,000 each year "for their (her) use and benefit." We may here state that both appellant and appellee agree that said instrument is unambiguous. If so, the plain language controls.

We shall now revert to subdivision (e) of Section I, relating to equality of payments to grantor and beneficiary as provided for in the concluding statement that the total sum of payments to be made to the grantor shall equal the total sum of payments to the beneficiary. The said subdivision contains only one sentence, and the concluding part is clearly limited and explained by the first part as will be apparent from a rereading of the sentence: "Reaffirming and continuing in full force and effect the provisions herein guaranteeing the annual payment of $9,000.00 to the beneficiary and her successor, it is my intent and purpose that the total of all dividends paid on said stock during the full period of this trust shall be divided equally between the beneficiary and myself, and if at any time the total dividends and payments received by the beneficiary or successor shall exceed those received by me, then, in such event, the trustees shall pay to me the remainder of funds on hand for distribution, or so much thereof as will make the total sum of payments made to me equal the total sum of payments made to the beneficiary or her successor." It will be noted that the beneficiary, or her successor, is to be paid $9,000 each year without qualification, and whatever payments are made to the grantor must come from "the remainder of funds on hand for distribution." The grantor's right to payment is contingent on there being a remainder. Subdivision (d) of Section I, hereinabove quoted, shows clearly that equality of such payments can be made only when the net income to the trust fund equals or exceeds $18,000 per year.

From the record, we learn that the dividends for 1943, amounting to $25,600, were paid to said Earl M. Baker, who reimbursed himself for excess income taxes alleged to have been paid by him, as well as repaying himself the $18,000 which he advanced to Myla Baker for the years of 1940 and 1941 to prevent a default and

possible sale of the stock. This was in violation of subdivision (d), Section I, of the trust instrument, which provides for payment of the dividends to the trustees and disbursement by them. We question the right of Earl M. Baker to reimburse himself from the trust funds for his voluntary payment of $9,000 to Myla Baker for each of the years of 1940 and 1941, such payments having been made in lieu of a sale of the stock. He was thereby simply protecting his own investment in the stock.

After painstaking consideration, we have reached the conclusion that the beneficiary under said trust instrument is entitled to receive the net sum of $9,000 each year during the existence of the trust, free from income tax or other charges. We, therefore, reverse the judgment of the trial court and remand the cause with instructions to enter a judgment in accord with this opinion.

Reversed and remanded with instructions.